Thank you. United States v. Callaso is our next case for argument. Mr. Harris. Good morning, Your Honor. Your Honors, may it please the Court, my name is Adam Harris and I represent the appellant, Rudolph Callaso, in this matter. The District Court's findings at sentencing, specifically as to relevant conduct and the obstruction enhancement, should be reversed and remanded because the Court erred in two ways. First, the District Court erred by finding Mr. Callaso responsible for an additional five deliveries of heroin based solely on the unsupported grand jury statement of a convicted murderer, without requiring any additional evidence or corroboration to held to be necessary. Second, the District Court erred by considering inadmissible, anonymous, unreliable hearsay within hearsay testimony in reaching its findings that Mr. Callaso obstructed justice. Now, most importantly, the District Court erred by finding Mr. Callaso responsible for an additional five deliveries because it relied exclusively on the unsupported grand jury statement of Anthony Murray. Now, specifically, the District Court erred on this because Murray's statement was not corroborated by any evidence to affirm its reliability. His statement did not provide any specific facts or details regarding the additional five transactions which he alleged. He's also not a credible person, as I mentioned in our brief quite extensively, and he was not subject to cross-examination. First, the District Court erred by finding that Murray's grand jury statement, in and of itself, met the government's burden of proof to establish relevant conduct because his statement was not supported by ample evidence to affirm its reliability. In fact, although Murray was constantly surveilled, and just to backtrack, Anthony Murray was the centerpiece to the government's investigation in a larger cocaine and heroin conspiracy. The investigation took place over a course of a couple years, and he was really their centerpiece to that investigation where his statements were traced. He was constantly surveilled by agents. They even utilized confidential informants to go with them on deliveries and participate in deliveries and transactions, where they even had some of these confidential informants wearing body cams and audio mics capturing evidence of these transactions. Yet, although Murray was constantly surveilled and his phones were tapped and traced throughout the course of this investigation, the government was unable to produce any evidence, such as surveillance or third-party cooperation, to support the idea that Mr. Colasso sold Murray heroin on these five other alleged mystery occasions. As discussed in our brief, the Probation Office echoes our position on this. Specifically, the PSR states that there's no other evidence, such as surveillance or third-party cooperation, to support the idea that the defendant sold Murray heroin on five occasions between February 2014 and July of 2015. Therefore, the Probation Office had recommended the base offense level of 16, which is what we were arguing for as well. Our position is supported by a multitude of cases, but what's most interesting is that the government, in their response brief, essentially relies on three cases to bolster their argument as to why, in fact, the court did have enough evidence to base their determination on this relevant conduct. Those three cases are U.S. v. Medina, U.S. v. Morrison, and U.S. v. Crockett. What I find interesting is that all three of those cases are sufficiently distinguishable from the matter at bar and, in fact, strengthen our position as to why the court erred in this regards. Starting with U.S. v. Medina, this court held that the district's court calculation of the drug quantity attributable to the defendant was supported by preponderance of the evidence. There in Medina, the court affirmed an increase of drug quantity from 10.5 kilos of cocaine to 15 kilograms of cocaine, based off of one co-conspirator's statements, as well as what the court calls ample evidence which affirmed the reliability of those statements. What's interesting also is that the PSR in that case actually was alleging that Mr. Medina was accountable for 67.5 kilos of cocaine. That was based on two post-arrest statements by the co-conspirator, which detailed the history of prior dealing between the two. Now, that history of prior dealing goes back eight years. It was from 2009 to 2001. This co-conspirator went into great detail as to how the conspiracy began, their relationship throughout the eight years, how many deliveries took place over the course of the eight years, and the amounts that varied and fluctuated throughout the course of their business dealings. So your argument, counsel, is essentially a quantum argument. You're not disagreeing that preponderance of the evidence is the standard. You're attempting to analogize these other three cases and distinguish them. You're not disagreeing, though, that our view is clear error. We have to determine whether the judge was clear error in attributing this relevant conduct. Is that correct? That's correct, Judge. So getting to the core of your argument, it's the amount of evidence that you believe the judge had before herself as to whether or not that's sufficient to attribute to your client. Is that correct? That's correct, Judge. Go ahead. The interesting correlation between essentially all the cases that I was able to find and certainly the three cases which the government relies on is that there's a common theme. It's commonly established within this court and others that there has to be a sufficient indicia of reliability on which the court can rely. Obviously, sentencing standards are different than trial. Hearsay evidence comes in, things of that nature. But the common theme with all three findings that this court came down with in Morrison, Medina, and Crockett is that additional evidence and or testimony was necessary to corroborate and substantiate a co-conspirator's statements in order to imbue those statements with sufficient indicia of reliability. So really our position hinges on the fact that here there was not a sufficient indicia of reliability on which the district court was able to rely. In the instant matter, additional evidence and additional testimony was nonexistent. How do you address the argument that there was obstruction that prevented that? Well, first of all, we obviously addressed the argument in our second argument that there was erroneously unreliable, anonymous hearsay within hearsay, which in and of itself is inherently unreliable and does not meet that threshold of bearing a sufficient indicia of reliability. However, as the government noted in their brief, there is an additional alleged incident which occurred 14 months prior to the evidentiary hearing, which involved an Instagram message to himself, which an anonymous source produced to some government agent and said, hey, I got this picture of a grand jury statement. Our position is that even if this court were to find that Mr. Colosso obstructed justice, we would argue that the hearsay testimony consideration, the double hearsay testimony should not be admitted and it should be found that this court erred, and that the additional evidence, the Instagram evidence, occurred 14 months prior to the evidentiary hearing. Now, during that time, there was a hearing. Thank you, Judge, I'm aware. I'm going to waive my rebuttal time and just continue. There was a hearing in front of the district court where the government stepped up on a motion to modify bonds and said they had no basis to object on the conditions of modifying the bond. Also, Mr. Murray was still planning on testifying that entire time. Our position on the obstruction enhancement was that even if this court were to find that he obstructed justice, he in no way intimidated the witness or made the witness unavailable to testify. But even if this court were to find that, in fact, yes, no, he did intimidate the witness, that is a separate issue in and of itself. I haven't seen any case law, and the government certainly didn't cite any case law, which says that if the witness is made unavailable by the defendant, all sentencing standards are thrown out the window. There are separate repercussions for an obstruction enhancement. Repercussion, which Mr. Colasso received, was a two-point enhancement. For that reason, it's our position that as far as the obstruction enhancement, that's separate and apart from whether or not the district court erred in relying solely on the uncorroborated testimony of a convicted murderer. In addition to that, in addition to the three cases, Murray's not a credible person. I went into great detail on that. We're talking about a convicted murderer prior to that, a UUW for a felon in possession, and prior to that, he was convicted of armed robbery. He also had everything to gain by telling the government what they wanted to hear. As I stated before, he was not subject to cross-examination, and that is a key element to consider. He didn't provide any specific facts or details regarding the five additional transactions that he alleged, only that they were essentially for the same amount, and that they were with the same people. That's it. No time, place, or manner. My time is up. Thank you very much. Thank you, counsel. Ms. Pillay. May it please the court, Shoba Pillay for the United States. The district court's finding of fact as to the drug quantity in this matter was not clearly erroneous because the district court found that the heroin quantity was proven by preponderance of evidence, and that finding was based on the cooperating witness's sworn grand jury testimony, which was in fact corroborated, and which it found credible because it had a sufficient indicia of reliability to support its probable accuracy, and it was corroborated for a number of reasons, starting with the fact that it was under oath in front of a grand jury. That in and of itself assists with the reliability, but he was also willing to testify, and he didn't testify not because of his own decision, but because of the intimidation by the defendant in this case. Those intimidation tactics were the reason Mr. Murray did not appear and was not willing to testify at the sentencing hearing, and the district court properly did not want to reward that obstructive behavior. Additional corroboration was shown by the fact that this defendant had pled guilty to two specific incidents, which were consistent with the nature and quantity of the additional transactions alleged by the government, and which the district court found by preponderance. And finally, the district court found that this cooperating witness didn't make any effort to irrationally inflate the drug quantities. Every transaction for which he testified to the grand jury was consistent with the prior transactions. There were 20 gram heroin buys. He wasn't looking to put kilo quantities on this defendant. That in aggregate corroborated the cooperating witness's grand jury testimony, and for those reasons, the district court's findings of fact were simply not clearly erroneous. Turning to the obstruction, again, the district court did not clearly err in applying that enhancement because it made its finding of fact that the defendant violated the protective order in that case by disclosing discovery relevant to the cooperating witness's testimony in order to intimidate him. The district court found that Murray's grand jury testimony transcript was on the defendant's Instagram account. It was provided to the government by someone other than the defendant, so someone who was not permitted to get discovery and was outside the scope of that protective order. And frankly, the defendant had no explanation for that fact at any of the hearings covering this issue. That finding of fact alone was sufficient to warn the obstruction of justice enhancement under this guideline. But in addition, the district court also found Murray's counsel report concerning the Facebook video to be credible because it was supported by that sufficient indicia of reliability. The district court rejected the defendant's argument that Murray's family provided that story because Murray didn't want to testify. And the reason the district court did not find that credible was because, A, this was an experienced criminal. He did have a criminal history. That's why he's an insider. That's why he's a cooperator. So he certainly understood what it meant to be a cooperator and that he was subject to testimony and, in fact, was willing to testify against all the other defendants that he had provided cooperative testimony against. More critically, the district court found it implausible that Murray and his family fabricated this Facebook video because to believe that would to believe that Murray, his family, his lawyer, and the government colluded in order to create this story in order to prevent Murray from having to testify. That just didn't hold water with the district court. And for all of those reasons, the government respectfully requests that this defendant's sentence be affirmed. Thank you. Thank you very much. Mr. Harris, the court appreciates your willingness to accept the appointment in this case. The case is taken under advisement.